United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Steelers Keys LLC and others, Plaintiffs, | ) ) ) |
| v. | ) Civil Action No. 20-22857-Civ-Scola ) |
| High Tech National LLC and others, Defendants. | ) ) ) |

### Omnibus Order

Now before the Court is Rodisbel Alvarez, Randy Fieler, Kenneth Garbez, Juan Moore, David Slinger, and Steelers Keys, LLC's (the "Steelers Parties") partial motion to dismiss pursuant to Federal Rule of Civil Procedure 41(a)(2) (ECF No. 108) and High Tech National LLC ("HTL"), Automotive Key Controls, LLC ("AKC"), KAR Auction Services, Inc. ("KAR"), and ADESA, Inc.'s ("ADESA") (collectively, the "HTL Parties") cross-motion for judgment on the pleadings. (ECF No. 117.)

At the outset, the Court notes that the Parties appear to agree that the relief sought in the Steelers Parties' motion should be granted. (*See* ECF No. 108; ECF No. 117, at 6.) While the Steelers Parties ask the Court to dismiss Counts VII through XVI of the Steelers's complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 41(a)(2), the Court notes that the Steeler Parties' request is procedurally improper. A party "wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004) (quoting 8 *Moore's Federal Practice* § 41.21[2], at 41–32). Rule 41, "according to its plain text, permits voluntary dismissals of entire 'actions,' not claims." *Perry v. Schumacher Group of La.*, 891 F.3d 954, 956 (11th Cir. 2018). The Court therefore construes the Steelers Parties' motion to dismiss as an unopposed motion to amend the pleadings under Rule 15, to remove the identified counts: VII through XVI. *See, e.g., Anderberg v. Masonite Corp.*, 176 F.R.D. 682, 686 (N.D. Ga.1997) ("When a party seeks to dismiss a single claim in a multi-count complaint instead of an entire action . . . the motion should be treated as a motion to amend the complaint under Rule 15(a) to delete the specific claim."). Because the parties are in agreement, the Court finds good cause to **grant** the motion as construed. (**ECF No. 108**.) The Court deems the complaint amended such that counts VII through XVI are dropped from this action, without prejudice.

### 1. Background

The Court turns next to the HTL Parties cross-motion for judgment on the pleadings. This matter has a complicated procedural history, which the Court recounts briefly below. On June 20, 2019, HTL and AKC filed a complaint against Jay Wiener in the United States District Court for the Southern District of Indiana (the "*Wiener* Case"). (ECF No. 1, *High Tech National, LLC et al. v. Wiener*, 20-cv-22789-RNS, (S.D Fla.).) In their complaint, they alleged generally that Wiener violated certain agreements and caused harm to HTL and AKC by "sow[ing] discord among HTL and AKC employees" and by "misappropriate[ing] equipment, inventory, and trade secrets for the purpose of competing with HTL and AKC." HTL and AKC amended their complaint on August 15, 2019, adding Rodisbel Alvarez, David Slinger, Kenneth Garbez, Juan Moore, and Steelers Keys, LLC as parties. Randy Fieler was not named in the amended complaint. Thereafter, on August 29, 2019, the Steelers Parties sued the HTL Parties in the United States District Court for the Southern District of Florida alleging the HTL Parties were "attempting to punish former employees and those who are friendly with or have a relationship with, Jay Wiener" (the "*Steelers* Case"). (ECF No. 1, at ¶ 1.)

On December 3, 2019, the Court entered an order transferring the *Steelers* Case to the Southern District of Indiana after finding the *Steelers* Case and the *Wiener* Case were "based on the same conduct and events." (ECF No. 41, at 1.) A week before the Court entered its transfer order, on November 26, the Magistrate Judge overseeing the *Wiener* Case in Indiana, decided the action pending in Indiana should be transferred to the Southern District of Florida (*Wiener* Case, ECF No. 101.) Notwithstanding the Magistrate Judge's decision, the Court ordered transfer of the *Steelers* Case to Indiana, as the Indiana Magistrate Judge's order was "not yet final." (ECF No. 41, at 4-5.) On June 17, 2020, the Magistrate Judge in Indiana issued an order reaffirming his decision to transfer the *Wiener* Case to the Southern District of Florida, and transferred the *Steelers* Case back to this Court. With both matters now before this Court, on August 3, 2020, the Court entered an order consolidating related cases, requiring all filings in the *Wiener* Case to be filed under the *Steelers* Case docket number. (ECF No. 86.) On August 7, 2020, HTL and AKC filed a second amended complaint in the *Wiener* Case. (ECF No. 92.) In their second amended complaint, HTL and AKC asserted claims against 34 defendants.

The instant motion for judgment on the pleadings is before the Court in the *Steelers* Case. The HTL Parties advance several arguments in support of their motion for judgment on the pleadings. Namely, they argue that with the declaratory relief claims dropped, the remaining Counts I through VI are

improperly joined, that Counts I through V are purely reflexive and should have been asserted as counterclaims in the *Wiener* case, and that certain of the remaining counts advanced by the Steelers Parties fail to state a claim as a matter of law. (ECF No. 117.)

### 2. Legal Standard

As set forth in Federal Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is proper where "no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1255 (11th Cir. 2010.) The Court must "accept all facts in the [pleadings] as true and view them in the light most favorable to the nonmoving party." *Id.* Essentially, a Rule 12(c) motion is subject to the same analysis as a motion to dismiss, pursuant to Rule 12(b)(6). *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Under the familiar Rule 12(b)(6) standard, the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if such plaintiff fails to nudge its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. To obtain a judgment on the pleadings, the moving party "must clearly establish that no material issue of fact remains unresolved and that it is entitled to judgment as a matter of law." *Bryan Ashley Intern., Inc. v. Shelby Williams Indus., Inc.*, 932 F. Supp. 290, 291 (S.D. Fla. 1996) (Highsmith, J.).

### 3. Analysis

#### A. Personal Jurisdiction Over KAR and ADESA

In their motion, the HTL Parties first ask the Court enter judgment on all claims against KAR and ADESA on the grounds that the Court lacks personal

jurisdiction over either Defendant. The Complaint makes clear that KAR and ADESA are Delaware Corporations with their principle places of business in Indiana. (ECF No. 1, at ¶¶ 9, 12.) Accordingly, the Court finds that KAR and ADESA are citizens of Delaware and Indiana. *See* 28 U.S.C. § 1332(c)(1). The complaint also states that KAR is the parent of ADESA, that KAR is responsible for managing the operations of HTL and AKC, that ADESA provides numerous services related to the buying and selling of vehicles, and that ADESA, as the sole member of HTL and AKC, provides oversight to HTL and AKC. (ECF No. 1, at ¶¶ 13, 23-25.)

The Plaintiffs also provide several declarations they purport support the Court's exercise of personal jurisdiction over KAR and ADESA. (ECF No. 126, Exs. A-E); *see Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295 (11th Cir. 2009) (discussing the use of affidavits, documents, or testimony in challenging or supporting personal jurisdiction). These declarations appear focused on providing evidence that these cases should proceed in Florida rather than Indiana and provide little information with respect to the Court's potential exercise of personal jurisdiction over KAR and ADESA. For instance, the declarations of Juan Moore, Rodisbel Alvarez, and David Slinger, simply state that the declarants entered into a confidentiality agreement which was between the respective declarant, HTL, and "its parent companies and their affiliates" which to the best of the declarants' "knowledge includes . . . " KAR and ADESA. (ECF No. 126-1, at 3; ECF No. 126-2, at 2-3; ECF No. 126-3, at 2.) The declaration of Ken Garbez adds that ADESA "has three (3) auto-auction facilities in Florida" and also provides some additional information as to the structure of the KAR/ADESA corporate family of companies, which is also summarized in the Plaintiffs' complaint. (ECF No. 126-4, at 2-3.) Finally, Alvarez's declaration notes that while an employee of HTL, Alvarez "did not directly report to anyone from KAR" (ECF No. 126-2, at 1), while Randy Fieler's declaration states that his "business unit reported directly to KAR and ADESA." (ECF No. 126-5, at 2.) In their cross motion for judgment on the pleadings, the Defendants argue that the Plaintiffs' "amorphous" pleadings with regards to KAR and ADESA fail to adequately allege personal jurisdiction over these Defendants.

To determine whether a party has adequately alleged personal jurisdiction over a foreign defendant, the Court must first evaluate whether there is jurisdiction under Florida's long-arm statute and next determine whether the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018). Florida's long-arm statute provides two means for subjecting a foreign defendant to the jurisdiction of Florida courts: 1) "a defendant is

subject to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or related to a defendant's contacts with Florida—for conduct specifically enumerated in the statute"; and 2) "a defendant is subject to *general* personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in substantial and not isolated activity in Florida." *Id.* (internal quotations omitted) (emphasis in original) (discussing Fla. Stat. § 48.193). Under either form of personal jurisdiction, the defendant must have "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The inquiry focuses on the defendant's contacts with the state, and not the "random, fortuitous, or attenuated" contacts it has by interacting with other persons affiliated with the state. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

### (1)  Specific Personal Jurisdiction

First, the Plaintiffs claim that KAR and ADESA are subject specific jurisdiction in Florida because they "conduct business" and have "committed torts" in Florida, including "improperly access[ing] Garbez's computer in Florida" and "hav[ing] been unjustly enriched from improper use of credit cards in Fieler's name." (ECF No. 1, at ¶ 18; ECF No. 126, at 5-6.) The Defendants respond that the Plaintiffs complaint and any supporting declarations are insufficient to prove KAR and ADESA could be hauled before Florida courts pursuant to a theory of specific jurisdiction. The Court agrees.

To determine whether the exercise of specific jurisdiction is proper, the Court applies a three part test in which the Court asks: 1) whether a plaintiff has established that its claims arise out of or relate to at least one of the defendant's contacts with the forum; 2) whether a plaintiff has demonstrated that the defendant purposefully availed itself of the jurisdiction; and 3) if the plaintiff has succeeded under prong one and two, whether exercise of specific jurisdiction would violate notions of fair play and substantial justice. *Waite*, 901 F.3d at 1313.

The Plaintiffs have failed to prove that the Plaintiffs' claims against KAR and ADESA arise out of KAR and ADESA's contacts with Florida. In the Eleventh Circuit, courts find that "a tort 'arise[s] out of or relate[s] to' the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Id.* at 1314 (quoting *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222-23 (11th Cir. 2009)). Having reviewed the Plaintiffs' complaint and the declarations the Plaintiffs submitted in connection with their briefing, the Court finds that the Plaintiffs cannot establish that KAR or ADESA's contacts

in Florida were a "but-for cause of the torts" the Plaintiffs allege. *Waite*, 901 F.3d at 1315. For instance, four of the five declarations the Plaintiffs submit were provided by former employees of HTL (ECF No. 126-1, at 2; ECF No. 126-2, at 2; ECF No. 126-3, at 2; ECF No. 126-5, at 1) and only Ken Garbez was a former ADESA employee, but he worked for ADESA in California and Las Vegas, only working in Florida as an HTL employee. (ECF No. 126-4, at 2.) Even if these Plaintiffs were employees of KAR or ADESA, the Court's jurisdictional inquiry must focus on KAR and ADESA's contacts with *Florida* and not the individual Plaintiffs. *Walden*, 571 U.S. at 284.

Upon review, the Plaintiffs propound no facts in their complaint or in other papers setting forth a *prima facie* case that KAR and ADESA are subject to this Court's specific jurisdiction, as it is their burden to do. *Internet Solutions*, 557 F.3d at 1293. Neither the Plaintiffs' complaint, nor the Plaintiffs' declarations provide factual information supporting their claims that KAR and ADESA committed any torts in Florida in order to potentially support a finding of specific jurisdiction over either entity. The Court finds nothing in the complaint or declarations support a finding that KAR or ADESA were a "but-for" cause of the injuries that Plaintiffs complain of in the *Steelers* Case's surviving claims. To the extent Plaintiffs attempt to allege that KAR and ADESA are subject to specific personal jurisdiction because of the presence of its subsidiaries in Florida, that theory of jurisdiction fails as a parent corporation "is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1293 (11th Cir. 2000). As the Plaintiffs fail to set forth a *prima facie* case for specific jurisdiction, the Court finds that the exercise of specific jurisdiction over KAR and ADESA is not justified.

### (2) General Personal Jurisdiction

Next, the Court asks whether KAR and ADESA are subject to this Court's general personal jurisdiction. As Florida's long-arm statute only extends to the limits on personal jurisdiction imposed by the Due Process Clause, the Court need only determine whether the exercise of general jurisdiction over KAR and ADESA would exceed constitutional bounds. *Waite*, 901 F.3d at 1316. In support of their argument that KAR and ADESA are subject to general jurisdiction in Florida, the Plaintiffs' summarily state in their complaint that KAR and ADESA "have systematically and continuously transacted business in Florida, are licensed to transact business in Florida and maintain a registered agent in Florida, and maintain significant places of business through Florida, such that they can be considered 'at home' in Florida and in this District." (ECF No. 1, at ¶ 17.) The Court does not agree.

A court may assert general jurisdiction over foreign defendants, consistent with the Due Process Clause, when their "'affiliations with the state are so continuous and systematic as to render them essentially at home in the forum State." *Waite*, 901 F.3d at 1317 (quoting *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted)). The Supreme Court explained in *Daimler AG v. Bauman*, that only a "limited set of affiliations with a forum" will render a defendant "essentially at home"—a corporate defendant is paradigmatically at home in the place where it is incorporated and where it has its principal place of business. 571 U.S. 117, 137 (2014). Outside of these paradigmatic circumstances, a corporate defendant will be considered at home in the "exceptional case" where it has operations that are "so substantial and of such a nature as to render the corporation at home in that state." *Waite*, 901 F.3d at 1317 (discussing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)). As KAR and ADESA are not incorporated in Florida and do not have their principal place of business here, the Court must ask whether this is the type of "exceptional case" alluded to in *Daimler* that would allow the Court to exercise jurisdiction over these Defendants. *See, e.g., Daimler*, 571 U.S. at 139 n. 19.

In determining whether a corporate defendant meets the exceptional case threshold sufficient for the Court to exercise general jurisdiction over that defendant, the Court must look not only at the "'magnitude of the defendant's in-state contacts'" but also at the "'corporation's activities in their entirety'" as a "'corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF*, 137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 139 n. 20). In its opinions in *Daimler* and *BNSF*, the Supreme Court set a high bar for meeting the exceptional case standard. *See Daimer*, 571 U.S. at 123 (finding that Daimler's indirect subsidiary, Mercedes-Benz USA, LLC, which was the biggest supplier of luxury cars in California and where that subsidiaries' car sales in California comprised 2.4% of Daimler's global sales was not sufficient to confer general jurisdiction over Daimler in California); *see also BNSF*, 137 S. Ct. at 1559 (finding rail company with over 2,000 miles of track and 2,000 employees in Montana was not subject to general jurisdiction there). Indeed, subsequent to the Supreme Court's decision in *Daimler*, the Eleventh Circuit noted that a corporate defendant may only be subject to general jurisdiction in Florida if its corporate activities "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

The Court finds, based on the Plaintiffs' complaint and the declarations provided by the Plaintiffs that the Plaintiffs have failed to show that KAR and

ADESA are engaged in business so continuous and systematic as to render them essentially at home, or essentially incorporated or with their effective principal places of business in Florida. As noted above, the Plaintiffs' declarations make only cursory mention of KAR and ADESA and certainly do not provide information sufficient to allow this Court to determine, even taking all facts as true, that KAR and ADESA are essentially at home in Florida. Moreover, while the Plaintiff pleads that KAR and ADESA "systematically and continuously transact[] business in Florida, are licensed to transact business in Florida and maintain a registered agent in Florida, and maintain significant places of business throughout Florida" the Court finds insufficient the Plaintiffs' conclusory allegations. *See Waite*, 901 F.3d 1318 (finding similar allegations insufficient to confer general jurisdiction).

In light of the above, the Court finds it lacks personal jurisdiction over Defendants KAR and ADESA. Accordingly, the Court grants the Defendants motion to the extent it asks the Court to dismiss all claims against KAR and ADESA based on want of personal jurisdiction.

### B. Joinder of Counts I through VI

With the declaratory relief claims, Counts VII through XVI, dismissed, the Court turns to the Defendants' argument that the remaining claims, Counts I through VI, of the Plaintiffs' complaint are improperly joined. In support of their arguments, the Defendants claim these counts have "nothing to do with one another" and will "involve highly individualized facts" with respect to each of the Plaintiffs. (ECF No. 117, at 9.) The Plaintiffs respond that there is a logical relationship between the remaining claims and there are "numerous common questions of law or fact at issue." (ECF No. 126, at 8.) Specifically, the Plaintiffs claim that the factual underpinning common to their claims is that: 1) they are residents of Miami, Florida; 2) that some of the Plaintiffs were former employees of HTL; and 3) that their claims arise out of adverse actions taken against them by the Defendants related to the Defendant's firing of Jay Wiener. (ECF No. 126, at 8.) The Defendants note that Jay Wiener is not a party to the Plaintiffs' complaint and the claims asserted, on their face, have nothing to do with Wiener's termination. (ECF No. 128, at 4-5.)

Federal Rule of Civil Procedure 20 allows multiple plaintiffs to join in one action if their claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). The Court agrees with the Defendants, that on the face of the Plaintiffs' complaint, Count I, alleged by

Garbez; Counts II through V alleged by Steelers; and Count VI alleged by Fieler involve different conduct, and will involve different questions of law and fact.

In the Eleventh Circuit, courts apply a "logical relationship" test to determine whether claims arise out of the same transaction or occurrence for purposes of Federal Rule 20. *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) (applying *Republic Health Corp. v. Lifemark Hosp. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)'s discussion of Federal Rule 13 to Federal Rule 20). Under this test, "a logical relationship exists if the claims rest on the same set of facts or the facts, on which one claim rests, activate additional legal rights supporting the other claim." *Id.* As further explained below, the Court does not see any logical relationship between Garbez's, Steelers's, and Fieler's respective claims against the various Defendants.

The Court looks first at Count I, Garbez's claim against the Defendants for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1302(a)(2)(C). In support of this claim, the Plaintiffs allege that Garbez took an old company computer that was "slated to be recycled" with express permission from the Defendants and the Defendants, without authorization, accessed that computer "through the Team Viewer platform to monitor and obtain information about Garbez's activities." (ECF No. 1, at ¶¶ 50, 100.) In light of these facts, Garbez alleges that the Defendants violated the Computer Fraud and Abuse Act.

Next, Counts II through V involve claims between Steelers and HTL for breach of contract; tortious interference; violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.204 *et seq.*; and trespass to chattels. In support of these claims, the Plaintiffs allege that HTL and Steelers entered into a lease agreement leasing certain HTL vehicles and property to Steelers to be used in connection with Steelers's business. (ECF No. 1, at ¶ 39). The Plaintiffs allege that before that agreement was properly terminated, HTL breached the agreement, and wrongfully repossessed its vehicles. (ECF No. 1, at ¶¶ 62, 65, 69.) The Plaintiffs further allege that one of the repossessed vehicles contained Steelers Property and that as a result of HTL repossessing these vehicles, Steelers lost a customer who was expected to generate $400,000.00 in business for Steelers. (ECF No. 1, at ¶¶ 66, 68.) Taking facts in the light most charitable to the Plaintiffs, the Court does not see any logical relationship between the facts and questions of law that must be adjudicated under the Computer Fraud and Abuse Act and those that the Plaintiffs will need to prove to support Steelers's claims against HTL.

Finally, Count VI involves a claim for unjust enrichment by Randy Fieler against the Defendants. In support of this claim, Fieler claims he was issued

corporate purchasing cards by the Defendants to make purchases on their behalf. (ECF No. 1, at ¶¶ 80-84.) After leaving HTL, Fieler received letters from HTL challenging the propriety of over $200,000.00 in purchases Fieler placed on his corporate credit cards and demanding he reimburse HTL for those expenses. (ECF No. 1, at ¶¶ 85-89.) Fieler later received letters from Chase Bank claiming that Fieler was personally responsible for over $100,000.00 in purchases that were put on his corporate cards. (ECF No. 1, at ¶¶ 90-91.) As above, the Court does not see a logical relationship between the questions of law or fact that Fieler will need to advance to prove his claim and the questions of law and fact that will need to be proven by Garbez and Steelers to prove their respective claims.

While the Plaintiff claims all of these actions are "based on Defendants' actions in seeking revenge against Plaintiffs for their relationship with Jay Wiener," the Court notes that this alleged factual commonality is immaterial as it is not a necessary element of any of the above-listed causes of action. (ECF No. 126, at 7.) The logical relationship test focuses on facts on facts which support multiple claims, or on "which one claim rests" that "activate[s] additional legal rights." *Smith*, 728 F. Supp. 2d at 1319. That there may be a common fact between the Plaintiffs, namely that any of the Defendants actions may have been taken in retaliation for the Plaintiffs' respective relationships with Jay Wiener is not a material element of any of their claims. The Court therefore finds this argument unpersuasive.

In light of the above, the Court dismisses Counts I through VI without prejudice. The Defendants are free to reassert these Counts as counterclaims in the *Wiener* Case currently pending before the Court, as long as it is procedurally proper to do so. Indeed, the Court has already found, as the Defendants note in their briefing, that the claims raised by the Plaintiffs in the *Steelers* Case and the Plaintiffs in the *Wiener* Case "substantially overlap." (ECF No. 41, at 3.)

### C. Counts I through V are Purely Reflexive

The Court also finds that Counts I-V advanced by Garbez and Steelers are compulsory counterclaims under Federal Rule 13. While the Plaintiffs argue the *Wiener* Case was not the "first-filed case," the Court has already ruled on that issue. (ECF No. 41, at 3) ("The Court finds that the first-to-file rule applies. The Indiana action was filed first . . . [t]he Plaintiffs have not presented compelling reasons to defeat the first-to-file rule."). This ruling constitutes law of the case. *See, e.g., Guarantee Ins. Co. v. Brand Mgmt. Serv. Inc.*, No. 12-61670-Civ, 2014 WL 11531365, at *12 (S.D. Fla. Sept. 15, 2014) (Snow, Mag. J.). While Plaintiffs continue to make arguments in contravention

of this holding, the Plaintiffs have provided no reasons to persuade this Court to deviate from its prior ruling.

Moreover, while Federal Rule 13 has certain exceptions pertaining to compulsory counterclaims, including where "the opposing party sued on its claim" in a manner "that did not establish personal jurisdiction over the pleader," the Court finds that exception is not at issue here. Fed. R. Civ. P. 13(a)(2)(B). Indeed, it appears that Garbez and Steelers filed a motion to dismiss in the *Wiener* Case which failed to raise arguments challenging personal jurisdiction. (*Wiener* Case, ECF Nos. 58, 59) As the Plaintiffs filed a responsive pleading in the *Wiener* Case without challenging personal jurisdiction, they have waived their right to that defense. *Salinero v. Johnson & Johnson, Inc.*, 2019 WL 2410076, at *2 (S.D. Fla. June 7, 2019) ("A challenge to personal jurisdiction is abandoned when a defendant fails to raise the issue in either a responsive pleading or Rule 12 motion."). The Court therefore agrees with the Defendants that Garbez and Steelers should have asserted Counts I-V in the *Wiener* Case as compulsory counterclaims. As stated above, the Court dismisses these claims without prejudice, therefore the Plaintiffs are free to pursue these claims as counterclaims in the *Wiener* Case, assuming it is procedurally proper to do so.

### 4. Conclusion

The Defendants also ask the Court to dismiss Counts I, III, VI, and VI on the grounds that they fail to state a claim upon which relief can be granted. As the Court has dismissed claims I-VI on the grounds that they should have been brought in the *Wiener* Case, the Court declines the Defendants' request to rule on whether the Plaintiffs have failed to state a claim under these Counts as the Court finds it more appropriate to adjudicate these claims in the context of the *Wiener* Case pleadings, should the *Steelers* Case Plaintiffs choose to reassert these claims in that action.

In sum, the Court **grants** the Plaintiffs' motion to dismiss Counts VII through XVI pursuant to Federal Rule 41(a)(2), which the Court construes as an unopposed motion to amend pursuant to Federal Rule 15. (**ECF No. 108**.) The Court also **grants in part** the Defendants' motion for judgment on the pleadings with respect to Counts I through VI. (**ECF No. 117**.) Counts I through VI of the *Steelers* Case are dismissed without prejudice, as the Court finds that these claims were improperly joined under Federal Rule 20, and that Counts I through V were compulsory counterclaims under Federal Rule 13. The *Steelers* Case Plaintiffs are free to reassert these claims, if it is proper to do so, as counterclaims in the *Wiener* Case. Should the *Steelers* Case Plaintiffs choose to reassert some or all of their claims, the Defendants may refresh their

arguments, cast in light of the pleadings in the *Wiener* Case, as to why these claims are improper and must be dismissed. While this order resolves all claims in the *Steelers* Case, the Court notes that this case **shall remain open** as the claims raised by the plaintiffs in the consolidated *Wiener* Case are still properly before the Court.

    **Done and ordered**, in chambers at Miami, Florida, on December 7, 2020.

                                              _____
                                              Robert N. Scola, Jr.
                                              United States District Judge